**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **DAYNA LOUISE BARLOW,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 17-1111-JWL** |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.   Background**

Plaintiff argues that the Administrative Law Judge (ALJ) erred in evaluating her subjective statements. She seeks remand for further administrative proceedings.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

2

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issue as presented in Plaintiff's Brief and finds no error in the ALJ's decision.

**II.   Discussion**

Plaintiff's sole claim of error is that "[t]he ALJ's analysis of Ms. Barlow's subjective statements was legally flawed and not supported by substantial evidence." (Pl. Br. 11) (bolding omitted). She argues that although the ALJ's evaluation of her subjective statements "certainly touched on several of the relevant factors" provided by case law and the regulations, "nothing [in the decision] actually constituted a legally sufficient explanation, supported by substantial evidence, indicating why the evidence as applied to those factors supported discounting [Plaintiff's] allegations regarding her physical impairments during the period at issue." Id. at 14 (citing Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995)). Plaintiff then explains her view of the evidence and how it supports a finding that her allegations were credible. Id. at 15-17.

The Commissioner argues that the ALJ's evaluation of Plaintiff's subjective symptoms was in accordance with the regulations and is supported by substantial evidence. She argues that assessment of symptom allegations by ALJs "warrant particular deference" because of their institutional advantage in such assessments. (Comm'r Br. 6-7) (quoting White, 287 F.3d at 910). Finally, she explains how, in her view, the record evidence supports the ALJ's determination, id. at 8-13, and argues that even if Plaintiff's testimony is given greater weight, as the ALJ found she has not shown

4

symptoms of disabling severity lasting twelve or more consecutive months as required for a finding of disability. (Comm'r Br. 12).

### A.     Legal Standard

The court's review of an ALJ's credibility determinations is deferential. They are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing

5

> impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488 (citations and quotation omitted).

In evaluating credibility, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. § 404.1529(c)(3). These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler, 68 F.3d at 391 (quoting Thompson, 987 F.2d at 1489).

The Commissioner has promulgated regulations suggesting factors considered in evaluating credibility which overlap and expand upon the factors stated by the court: daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii). However, Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

### B.  The ALJ's Analysis and Findings

The court begins, as it must, with the ALJ's evaluation of Plaintiff's allegations.

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  [The court] may not displace the agency's choice between two fairly conflicting views, even though [it] would justifiably have made a different choice had the matter been before it de novo.

Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

The ALJ summarized Plaintiff's allegations of disabling symptoms resulting from her impairments:

> The claimant alleges that she was disabled, and unable to perform any work activity from the alleged disability onset of December 18, 2011, through January 12, 2014, the date before she returned to full-time, SGA [(substantial gainful activity)] level work as an Engineering Associate with the Kansas Department of Transportation.  She alleges disabling impairment secondary to back and neck pain and functional limitations related to her cervical and lumbar spine degenerative disease, <u>both before and after surgeries</u>.  She alleges additional right lower extremity impairment status-post (right) Achilles debridement surgery in 2013.

(R. 20) (emphasis added).  Plaintiff acknowledges that she was seeking a closed period of disability between December 18, 2011 and her return to full-time work on January 13, 2014.  The ALJ found that Plaintiff's allegations of disabling symptoms "are not entirely credible for the reasons explained in this decision."  Id.

The ALJ provided a detailed summary of Plaintiff's surgeries, including her surgeries during the closed period at issue. (R. 20-24).  He noted surgeries before she quit working:  that eight years earlier, Plaintiff had a <u>cervical</u> spine fusion surgery at the C5-C6 level in 2003; and in April 2011 she had a <u>lumbar</u> microdisc surgery which

7

improved with walking activities, leaving mild back pain and lower extremity symptoms, but on follow-up she complained of increased pain in her cervical spine. Id. 20-21.

The ALJ noted surgeries after Plaintiff quit working. On December 28, 2011, Plaintiff had a consultation regarding her cervical spine and had surgery on February 14, 2012 consisting of removal of the fusion hardware from her 2003 surgery, anterior discectomy at C4-C5, and arthroplasty disk replacement at C5-C6. (R. 21); see also (R. 1289-90). She was doing well status-post, and in March 2012 complained of pain in her low back and right leg associated with lumbar spine degeneration. Id. On May 25, 2012 she had discectomy with decompression and instrumentation at the L2-L3 and L3-L4 level of her lumbar spine. Id. at 21-22.

The ALJ discussed her follow-up:

> Follow-up with Dr. Hisey on July 9, 2012 revealed the claimant was doing 'a lot' better, and had driven 5 hours without much difficulty. She noted sitting ca[u]sed some pain in the hip, not the back and notwithstanding the pain; she was up and walking daily. During the exam, Dr. Hisey noted the claimant was able to sit comfortably and had no difficulty acquiring a full, upright position when getting out of the chair. Her gait was balanced. She had paravertebral muscles spasms and the spinous processes were tender in the upper region, but the straight leg raises were normal bilaterally, with no radicular issues. The lower extremity exam revealed decreased sensation of the entire right leg to touch. The lumbar spine x-rays were unremarkable. The claimant had been prescribed a back brace, and began physical therapy. She was on pain medications and muscle relaxant Flexeril.

(R. 22).

The ALJ noted that Plaintiff did a follow-up on her cervical surgery on August 6, 2012, rated her neck pain at 2 out of 10 and arm pain at 1 out of 10, with 10 being the worst. (R. 22). "She was released to resume all regular activities." Id.

8

>Dr. Hisey noted the claimant was doing well following her <u>lumbar</u> spine surgery when seen for follow-up in September 2012 except for increased pain when medication was changed. Otherwise, the claimant was making steady improvement and Dr. Hisey took her out of the back brace. The follow-up x-rays in November 2012 showed the hardware remained in excellent positon [sic] and after examining the claimant on November 12, 2012; Dr. Hisey noted the claimant could ["]lift as much weight as she needed."

<u>Id.</u> (emphasis added).

The ALJ noted that Plaintiff had Achilles surgery on March 27, 2013 and that six weeks later she reported doing well. (R. 23). He noted that at her six-month checkup she was no longer taking Mobic, swelling was decreased, she was climbing stairs and walking, and was discharged with regard to her Achilles treatment. <u>Id.</u>

The ALJ noted Plaintiff had additional <u>lumbar</u> spinal decompression surgery at L4-L5 on May 30, 2013, and two weeks post surgery "she was walking without a back brace," and "had some soreness in her back <u>with over exertion</u>, but otherwise was doing well." <u>Id.</u> (emphasis added).

The ALJ summarized Plaintiff's function reports of her activities during the relevant period:

>On the adult function reports, covering the relevant period, the claimant alleged she could sit, stand or walk no more [than] 1 to 1 ½ hours at one time. She prepared simple meals, cleaned, mopped, and did laundry, with limitation secondary to pain. She continued to drive, was fairly active with weekly reading groups and Church activities. The claimant reported a 20 pound lifting limit and consistent with reports to her medical providers, she indicated her pain symptoms increased when she over exerted her self physically. The recent function reports at exhibit 11 and 12E from December 26-27, 2013 indicate the claimant was pursuing a master's degree in theology online. She used lumbar cushions when sitting and indicated she had some chiropractic treatments for low back symptoms. The undersigned notes these latter function reports were completed less than 12-

9

> months after her repeat lumbar spine surgery and less than 12-months after her right Achilles tendon repair surgery.

(R.24) (citations omitted).  The ALJ concluded his RFC assessment:

> The claimant has had a series of surgeries over the span of several years, which interestingly appear to have been timed in such a way that when she made improvement in her physical ability, she quickly had the next surgery scheduled. The record does show that she made steady, and expected improvements and had good pain control with her non-narcotic pain medication and muscle relaxers.  Further evidence of her recovery is indicated by her return to full-time work activity as an Engineering Associate III with the Kansas Department of Transportation on January 13, 2014, the job that she held from February 23, 2009 through December 3, 2011, just before her alleged disability onset.
>
> When reviewed in light of each instance of surgical repair and the amount of time spent in recovery prior to the next surgery, there is nothing that demonstrates that at any time, the claimant had listing level impairment or that she had sustained functioning for a continuous 12-month period at less than a sedentary exertional level.
>
> In sum, after a thorough review of the evidence, the claimant's allegations and testimony, forms completed at the request of Social Security, the objective medi[c]al findings, medical opinions, and other relevant evidence, the undersigned finds the claimant capable of performing work consistent with the residual functional capacity established in this decision

(R. 25-26).

### C.   Analysis

In context, the ALJ's rationale reveals that he found Plaintiff's allegations "not entirely credible" because she alleged that she was disabled because of pain and functional limitations resulting from her degenerative disc disease "both before and after surgeries," but that allegation was inconsistent with her reports to her treating healthcare providers and her adult function reports, which were also consistent with her return to

10

work in January 2014 and with the opinion of the state agency medical consultant, Dr. Timmerman.

The decision reveals the following history:

| | |
|---|---|
| 2003 | Cervical surgery |
| April 2011 | Lumbar surgery |
| December 2011 | Quit work |
| February 2012 | Cervical surgery |
| May 2012 | Lumbar surgery |
| March 2013 | Achilles surgery |
| May 2013 | Lumbar surgery |
| January 2014 | Return to work |

The ALJ took great pains in the decision to demonstrate that Plaintiff recovered and improved from each surgery before pursuing the next surgery in the series. Plaintiff argues that the ALJ suggests that she "somehow scheduled the surgeries … simply to coincide with her improvement following a previous surgery." (Pl. Br. 15). The point of the ALJ's discussion is not that Plaintiff scheduled her surgeries to coincide with improvement. Rather, the point is that Plaintiff did improve following each surgery, and, as the ALJ found, "there is nothing that demonstrates that at any time, the claimant had listing level impairment or that she had sustained functioning for a continuous 12-month period at less than a sedentary exertional level." (R. 25-26). The point is that absent a 12-month continuous period of disabling limitations, Plaintiff is not disabled within the meaning of the Act and the regulations. According the ALJ's credibility determination due deference, Plaintiff has shown no error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

11

Dated May 21, 2018, at Kansas City, Kansas.

                                    s:/ John W. Lungstrum
                                    **John W. Lungstrum**
                                    **United States District Judge**